**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PATRICK STEPHEN RANKIN, | ) | Case No. 23-11822-BFK |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| MICHAEL CALDWELL, | ) | Adversary Proceeding |
| | ) | No. 24-01001-BFK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK STEPHEN RANKIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter came before the Court for a trial on the merits on September 27, 2024. The Plaintiff's Complaint seeks a judgment of nondischargeability under Bankruptcy Code Sections 523(a)(2)(A) & (6) (Count I) and 523(a)(4) & (6) (Count II).[1] For the reasons stated below, the Court finds in favor of the Plaintiff on Count I and will enter a non-dischargeable judgment against the Defendant in the amount of $150,000.00 plus interest at the federal judgment rate from the entry of the Judgment Order, and costs. On Count II, the Court will enter judgment for the Defendant.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact.

A. *The Agreement and the Defendant's Implied Representations that He Was a Licensed Contractor.*

---

[1] The Plaintiff did not argue anything having to do with Section 523(a)(6) (willful and malicious injury) at the trial. The Court considers these claims to be abandoned.

1

1. The Plaintiff, Michael Caldwell, is an individual residing in Leesburg, Virginia.

2. The Defendant, Patrick Stephen Rankin, is the sole owner, manager, and member of PRCS, LLC ("PRCS"). Docket No. 5, Def. Answer ¶ 5.

3. PRCS is a Commonwealth of Virginia limited liability company doing business as PRCS Design/Build.[2]

4. Neither the Defendant nor PRCS is a licensed Virginia contractor. Pl. Exs. 4, 5.[3]

5. In November 2021, the Plaintiff and PRCS entered into an agreement (the "November 2021 Agreement") for "design and construction management services" for extensive renovations of the Plaintiff's home, including demolition of an existing screened-in porch, construction of a year-round sunroom, excavation of storage space underneath the house, installation of a door for the crawl space, and alterations to the pool deck. Pl. Ex. 1, p. 6.[4]

6. The Plaintiff understood that PRCS was a licensed contractor. His understanding was based on the following undisputed facts: (a) the Defendant had successfully performed renovation work on other homes in the Plaintiff's neighborhood; (b) PRCS was doing business as "PRCS Design/Build;" (c) the November 2021 Agreement used the term "install" eleven times for various items; (d) the Defendant agreed "to walk the design and plans through the Town of Leesburg and Loudoun County," which required PRCS to be a licensed contractor; and (e) the Defendant never told the Plaintiff that he was not a licensed contractor. *See* Pl. Exs. 1, 4, 5; *See also* Def. Ex. A-B.

---

[2] *See* Commonwealth of Virginia State Corporation Commission, https://perma.cc/T9MK-VC3Q (last visited Oct. 8, 2024).
[3] The Plaintiff's Exhibits will be referred to as "Pl. Ex. __." The Defendant's Exhibits will be referred to as "Def. Ex. __."
[4] The Complaint alleges that "on or about November 17, 2023, the Plaintiff entered into an agreement with PRCS . . . ." Docket No. 1, ¶ 8. The correct, undisputed date of the agreement is November 2021.

2

7. The Defendant acknowledged in his testimony that one must be a licensed contractor to process building plans and permits with the Town of Leesburg and Loudoun County.

8. The Plaintiff testified credibly that he never would have hired PRCS had he known that it was not a licensed contractor.

B. *Work Begins on the Project.*

9. On March 10, 2022, the Defendant e-mailed the Plaintiff stating: "We are in the que [sic] at Loudoun County, should have our building permit in the next few days. We are on schedule to begin work the week of March 21st." Def. Ex. A, p. 2.

10. On March 22, 2022, the Defendant e-mailed the Plaintiff stating: "We will be there tomorrow to start taking the existing deck down, etc." *Id.*

11. Work began on the home shortly thereafter. Laborers appeared at the home and: (a) demolished the screened-in porch; (b) cut a large hole in the foundation; and (c) removed the pool coping. No other work was performed by PRCS.

12. The Plaintiff paid PRCS a total of $173,000. *See* Pl. Exs. 3, 8. A large portion of the funds paid by the Plaintiff were used by the Defendant for his personal expenses. *Id.*

13. The Defendant testified (not credibly) that he had no idea who the laborers were, or how they came to appear at the property to perform the demolition work.[5]

C. *The Defendant Abandons the Project.*

14. The Defendant abandoned the project and did not complete the work. He did not respond to the Plaintiff's phone calls. By the Fall of 2021, PRCS was out of business.

---

[5] The Defendant testified that he did not apply for a building permit. Either no building permit was ever issued while PRCS was on the job, or the permit that was issued was fraudulently obtained, because PRCS was not a licensed contractor.

3

15. The Plaintiff engaged Total Remodeling Services ("TRS") to complete the project. Pl. Ex. 7. He paid TRS $150,000.00.

16. The Plaintiff is seeking a judgment against the Defendant in the amount of $150,000.00. The Plaintiff acknowledges that there was some value to the demolition work that PRCS completed.

17. The Defendant testified that he agreed to act only as a construction manager, and that he did not agree to act as a contractor on the project. The Court finds that the Defendant's testimony was not credible. PRCS consistently used the term "Design/Build" in its signage and in the November 2021 Agreement. It agreed to "install" the various items. It agreed to pull the permits, which requires one to be a licensed contractor. The Defendant never advised the Plaintiff that he was *not* a licensed contractor. Most importantly, the Defendant e-mailed the Plaintiff assuring him that work would begin the following day (Def. Ex. A, p. 2), and thereafter, the work started. The Defendant's testimony that he did not know who performed the work was not credible.[6]

D. *The Defendant Files for Bankruptcy.*

18. On November 7, 2023, the Defendant filed a Voluntary Petition under Chapter 7 with this Court. Case No. 23-11822-BFK.

19. On January 8, 2024, the Plaintiff timely filed the Complaint in this Adversary Proceeding. Docket No. 1.

## Conclusions of Law

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984.

---

[6] *Omnia causa fiunt* ("Everything happens for a reason").

4

The Defendant has consented to the entry of a final judgment by the undersigned Bankruptcy Judge. *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665 (2015). *See also* Initial Scheduling Order, Docket No. 3, ¶ 5 ("Any party not consenting to the entry of a final order by the Bankruptcy Judge shall file a Motion to withdraw the reference or for other appropriate relief within 30 days of the entry of this Scheduling Order, and shall promptly set the matter for a hearing. The failure to comply with the terms of this paragraph shall be deemed to constitute consent to the entry of final orders by the Bankruptcy Judge.")

The Plaintiff bears the burden of proof, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87 (1991).

I. **Count I – Fraud 11 U.S.C. § 523(a)(2)(A).**

To prevail under § 523(a)(2)(A), the plaintiff ordinarily "must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Foley & Lardner v. Biondo (In re Biondo),* 180 F.3d 126, 134 (4th Cir. 1999).

A. *Misrepresentations.*

A misrepresentation "consists of any words or conduct, which produce a false or misleading impression of fact in the mind of another." *In re Pleasants*, 231 B.R. 893 (Bankr. E.D. Va. 1999) (unlicensed architect case). Further, "[a]n omission may constitute a misrepresentation where the circumstances are such that the omission creates a false impression, as section 523(a)(2(A) does not require an overt misrepresentation." *Id*. at 897. *See also Husky Int'l Electronics v. Ritz,* 578 U.S. 355 (2016) ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.")

5

In the case of *In re Stevens*, 647 B.R. 299 (Bankr. E.D. Va. 2022), Judge St. John of this Court held with respect to contractor fraud cases:

> In cases involving contractor-debtors, a plaintiff generally can prove fraud or misrepresentation by one of two ways. First, fraud or misrepresentation may be shown by demonstrating that the debtor never intended to comply with the terms of the contract when he entered into it. *Webb v. Isaacson* (*In re Isaacson*), 478 B.R. 763, 775 (Bankr. E.D. Va. 2012) (quoting *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 622 (Bankr. N.D.N.Y. 2010)); see also *Pennsylvania v. Burns* (*In re Burns*), Adv. No. 5-AP-07-50121, 2008 WL 2782659, at *3 (Bankr. M.D. Pa. July 11, 2008); *Spinoso v. Heilman* (*In re Heilman*), 241 B.R. 137, 150 (Bankr. D. Md. 1999). Fraud or misrepresentation may also be shown where the contractor-debtor intentionally misrepresented a material fact or qualification when soliciting or obtaining work. *In re Isaacson*, 478 B.R. at 775 (quoting *326 In re Henderson*, 423 B.R. at 622; citing *In re Burns*, 2008 WL 2782659, at *3). ' "[W]hen determining whether a contractor committed fraud in connection with a construction project, the question pivots on whether during the negotiations the contractor induced the property owner into signing the contract by making material false representations, like promising to obtain the necessary permits or overstating his qualifications." ' *Id.* (quoting *In re Henderson*, 423 B.R. at 622); see also *In re Pleasants*, 231 B.R. at 901 (concluding that misrepresenting having a professional license can constitute fraud pursuant to § 523(a)(2)(A)). Fraud does not result solely from " '[s]ubstandard performance or a mere breach of the construction contract.' " *In re Isaacson,* 478 B.R. at 775 (quoting *In re Henderson*, 423 B.R. at 622).

*Stevens*, 647 B.R. at 325.

In the recent case of *Defot-Sido v. Carr*, 2024 WL 3823789 (E.D. Va. 2024), Bankruptcy Judge Kindred of this Court held that a plaintiff failed to prove that a defendant misrepresented his licensing status because, among other things, "[the plaintiff] testified on direct examination that while her 'impression' was that [the defendant] was 'a licensed contractor,' she was 'not 100% sure' whether [the defendant] ever stated that he was licensed." *Id.* at *3. The District Court affirmed, holding that the Bankruptcy Court "did not clearly err in finding that [the defendant] did not misrepresent to [the plaintiff] that he was a licensed contractor"). *Id.* This case, however, is

6

factually distinguishable from *Defot-Sido*. Here, the Defendant intentionally misrepresented his licensing status by holding himself out as a licensed contractor. As noted above: (a) the Defendant had successfully performed renovation work on other homes in the Plaintiff's neighborhood; (b) PRCS was doing business as "PRCS Design/Build;" (c) the November 2021 Agreement used the term "install" eleven times for various items; (d) the Defendant agreed "to walk the design and plans through the Town of Leesburg and Loudoun County," which required PRCS to be a licensed contractor; and (e) the Defendant confirmed in his e-mails that work was about to commence, and shortly thereafter laborers showed up to the property to begin the demolition.

The Court rejects the Defendant's version of events, to the effect that he only agreed to act as a construction manager, and that it was up to the Plaintiff to hire his own licensed contractors. There was no language to that effect, express or implied, in the November 2021 Agreement. Rather, the language provided as follows: "30% due upon signing of the proposal, 40% due upon receipt of the Loudoun County Permit, 20% due upon completion of the excavation, and 10% due upon completion." Def. Ex. B, p. 2. The Defendant confirmed in his e-mails that work on the project would start in just a few days, and then laborers showed up at the Plaintiff's property and began the demolition work. The Defendant's testimony simply was not credible on this issue.

The Court finds that the Defendant materially misrepresented his status as a licensed contractor in Virginia.

B. *Intent to Deceive.*

The Court finds that the Defendant intended to deceive the Plaintiff into believing that the Defendant was a licensed contractor. The Defendant knew that he and PRCS were not licensed contractors, and he allowed the Plaintiff to believe that they were licensed.

7

*C. Inducing the Plaintiff to Act.*

The Court finds that the Defendant induced the Plaintiff to enter into the agreement, and to pay the $173,000.00 for the renovation of the Plaintiff's home.

*D. Causing Harm.*

The Plaintiff has been harmed. The harm he has suffered resulted from the Defendant's misrepresentations. *See In re Stevens*, 647 B.R. at 330. ("When such false representation is a 'substantial factor' that induces a creditor to enter into an agreement, if 'the debtor's work later appears to be defective, and the creditor suffered a loss, the creditor has established a *prima facie* case that the defects derive directly from the lack of professional qualifications of the debtor.") (citations omitted). The Plaintiff paid the Defendant $173,000.00. The Plaintiff estimated the value of the work that was completed was approximately $23,000.00. This evidence was not contradicted. The Defendant did not attempt to prove that the demolition work had any higher value. The agreement provided for an "aggregate project budget" of $125,000.00, plus $25,000.00 for the Four Seasons Glass Roof Application and $20,000.00 for a Travertine veneer for the pool deck, for a total of $170,000.00 Pl. Ex. 1, p. 7. Here, $23,000.00 (or 13.5% of the estimate) is a generous credit for the work that was completed.

The Court finds that the Plaintiff has suffered $150,000.00 in damages caused by the Defendant.

*E. Justifiable Reliance.*

The Supreme Court has held that, for purposes of Section 523(a)(2)(A), the standard is justifiable reliance. *Field v. Mans*, 516 U.S. 59, 73 (1995) (describing justifiable reliance as "an intermediate level of reliance.") The Court finds that the Plaintiff has met his burden of proof on justifiable reliance. The Defendant held himself out as a licensed contractor. The Plaintiff had no

8

reason to question that. The Plaintiff observed that the Defendant successfully completed other jobs in his neighborhood. There was nothing to alert the Plaintiff to the fact that the Defendant was unlicensed.

Accordingly, the Court will enter judgment for the Plaintiff on Count I.

**II.   Count II – Breach of Fiduciary Duty 11 U.S.C. § 523(a)(4).**

Section 523(a)(4) provides for an exception to a debtor's discharge where a debt is the result of the debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4). To succeed on a claim of fiduciary defalcation, "a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation." *Kubota Tractor Corp. v. Strack (In re Strack),* 524 F.3d 493, 497 (4th Cir. 2008) (citation omitted).[7]

   A.   *Was the Defendant Acting as a Fiduciary?*

The term "fiduciary" under § 523(a)(4) is limited to instances involving technical or express trusts. *Strack*, 524 F.3d at 497, n.6; *Harrell v. Merch.'s Express Money Order Co. (In re Harrell),* 173 F.3d 850, 1999 WL 150278, *1, *3 (4th Cir. 1999). Accordingly, the exception applies only to a debt created by a person who was already a fiduciary at the time that the debt was created. *KMK Factoring, LLC v. McKnew (In re McKnew),* 270 B.R. 593, 624 (Bankr. E.D. Va. 2001); *Glob. Express Money Orders, Inc. v. Davis (In re Davis),* 262 B.R. 673, 682 (Bankr. E.D.

---

[7] In *Strack*, the Fourth Circuit held:

> To be defalcation for purposes of 11 U.S.C. § 523(a)(4), an act need not "rise to the level of ... 'embezzlement' or even 'misappropriation.' " *In re Ansari*, 113 F.3d at 20. "[N]egligence or even an innocent mistake which results in ... [the] failure to account is sufficient." *Republic of Rwanda v. Uwimana (In re Uwimana),* 274 F.3d 806, 811 (4th Cir.[ ]2001).

*Strack*, 524 F.3d at 498 n.7. This holding effectively was overruled by the Supreme Court's later decision in *Bullock*, discussed below.

Va. 2001); *see also Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934) (Cardozo, J.) ("[T]he statute [Bankruptcy Act Section 17(4), the predecessor to 11 U.S.C. § 523(a)(4)] speaks of technical trusts, and not those which the law implies from the contract. . . . It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto.") (internal quotation marks omitted).

Although the term "fiduciary capacity" is determined under federal common law, *Harrell v. Merch.'s Express Money Order Co. (In re Harrell),* 173 F.3d 850 (4th Cir. Feb. 19, 1999), the court may look to State law for guidance. *See Kubota Tractor Corp. v. Strack (In re Strack),* 524 F.3d 493, 498 (4th Cir. 2008) ("in determining whether such a trust was established, we look to the law of the Commonwealth of Virginia"); *Airlines Reporting Corp. v. Ellison (In re Ellison),* 296 F.3d 266, 271 (4th Cir. 2002) ("[T]he Ellisons, when acting as officers and directors of Sovereign Travel, 'occupied a fiduciary relationship toward [Sovereign Travel]' under West Virginia law"); *KMC Factoring, L.L.C. v. McKnew (In re McKnew),* 270 B.R. 593, 628 (Bankr. E.D. Va. 2001) ("To determine the existence of a fiduciary relationship under § 523(a)(4), a court must apply federal law. However, state law is relevant to this inquiry") (citations omitted).

The Plaintiff argues that Virginia Code § 43-13 "imposes on a contract[or] a duty to hold funds provided to the contractor by or on behalf of the property owner, solely for the purposes of discharging obligations incurred in connection with the work performed." Docket No. 1, Compl. ¶ 23. Va. Code § 43-13 provides as follows:

> Any contractor or subcontractor or any officer, director or employee of such contractor or subcontractor who shall, with intent to defraud, retain or use the funds, or any part thereof, paid by the owner or his agent, the contractor, or the lender to such contractor or by the owner or his agent, the contractor, or the lender to a subcontractor under any contract for the construction, removal, repair, or improvement

>   of any building or structure permanently annexed to the freehold for any other purpose than to pay persons performing labor upon or furnishing material for such construction, repair, removal, or improvement is guilty of larceny in appropriating such funds for any other use while any amount for which the contractor or subcontractor may be liable or become liable under his contract for such labor or materials remains unpaid and may be prosecuted upon complaint of any person or persons who have not been fully paid any amount due them.
>
>   The use by any such contractor or subcontractor or any officer, director, or employee of such contractor or subcontractor of any moneys paid under the contract before paying all amounts due or to become due for labor performed or material furnished for such building or structure for any other purpose than paying such amounts due on the project shall be prima facie evidence of intent to defraud. Any breach or violation of this section may give rise to a civil cause of action for a party in contract with the general contractor or subcontractor, as appropriate; however, this right does not affect a contractor's or subcontractor's right to withhold payment for failure to properly perform labor or furnish materials on the project. Any contract or subcontract provision that allows a contracting party to withhold funds due under one contract or subcontract for alleged claims or damages due on another contract or subcontract is void as against public policy.

Va. Code § 43-13.

In *Strack*, the Fourth Circuit placed reliance on whether funds are required to be segregated for purposes of determining whether a fiduciary relationship exits, holding:

>   At bottom, "[i]f the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If[, however,] the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created."

*Strack*, 524 F.3d at 499 (citation omitted).

In *Racetrack Petroleum, Inc. v. Khan* (*In re Khan*), District Judge Ellis employed a three-part test to determine whether one is acting as a fiduciary: (i) whether the designated trustee lacks legal title to the property at issue; (ii) whether the trustee is restricted in his use of the property;

11

and (iii) whether the property remains separate from the trustee's own property. 461 B.R. 343, 348 (E.D. Va. 2011).

Bankruptcy Judge St. John of this Court rejected the argument that a contractor who agreed to construct cabinets for the plaintiff was a fiduciary, relying on *Strack* and *Kahn*. *In re Isaacson*, 478 B.R. 763 (Bankr. E.D. Va. 2012). Other courts within the Fourth Circuit have rejected allegations of fiduciary status in contractor cases, where there was no requirement that the funds be segregated. For example, in *In re Vito*, 598 B.R. 809 (Bankr. D. Md. 2019), Bankruptcy Judge Harner held that the Maryland contractor statutes, MD. CODE REAL PROP. §§ 9-201, 9-202, did not create a fiduciary relationship for purposes of Section 523(a)(4). Although the Maryland statute, unlike Virginia Code § 43-13, provides that construction funds "shall be held in trust," and in fact is called the Trust Statute, Judge Harner held that "the language and the structure of the Trust Statute do not rise to the level of an express or technical trust." *Id.* at 821. *See also In re Heilman*, 241 B.R. 137 (Bankr. D. Md. 1999) (rejecting trust fund theory against president of construction company for purposes of Section 523(a)(4)).[8]

In *Arrow Concrete v. Bleam (In re Bleam)*, 356 B.R. 642 (Bankr. D. S.C. 2006), the court held that South Carolina's construction lien statutes, S.C. Code Ann. §§ 29-7-10 and 20 (1976, as amended), did not create a trust relationship. The South Carolina statutes created a lien in favor of laborers, subcontractors and materialmen, but did not require the contractor to segregate the funds and did not use the term "trust."

---

[8] The Maryland Trust Statute can be distinguished from the Maryland Custom Home Protection Act, Md. Real Prop. Code § 10–502, which does appear to impose a trust-like duty of segregation. *See In re Aiken*, 2008 WL 2856697 (Bankr. D.C. 2008) ("the statutorily imposed trust arising under the Maryland Custom Home Protection Act, which requires a contractor to segregate funds (which then, effectively, becomes the res) and strictly limits the contractor's disbursement of those funds, imposes traditional trust-like duties independent of any wrongdoing or violation of the statute and can therefore be used to support a finding that the statutory trust is a technical or express trust for purposes of § 523(a)(4).")

Similarly, Virginia Code § 43-13 does not use the terms "trust" or "fiduciary," and it does not require the segregation of construction funds. *See Kahhoe Constr. Corp. v. United Virginia Bank*, 257 S.E.2d 837 (Va. 1979) ("While this criminal statute [Va. Code § 43-13] creates a moral obligation, it contains no language creating a legal trust for the benefit of materialmen and laborers.") The Court finds, consistent with the above cases, that Virginia Code § 43-13 does not create a trust relationship for purposes of Bankruptcy Code Section 523(a)(4).

B.    *The Bullock Standard.*

In the case of *Bullock v. BankChanpaign, N.A.*, 569 U.S. 267 (2013), the Supreme Court held with respect to the term "defalcation:"

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See id., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'willful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.*, § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock*, 568 U.S. at 273-74.

In this case, the Court finds it unnecessary to address the *Bullock* standard, in light of the holding above that the Plaintiff has not demonstrated that a fiduciary relationship existed.

## Conclusion

The Court, therefore, will enter a separate Judgment Order under which:

A. The Court will enter judgment on Count I against the Defendant in the amount of $150,000.00, with interest at the federal judgment rate from the entry of the Judgment, and costs.

B. Count II will be dismissed.

C. The Clerk will mail copies of this Memorandum Opinion, together with the accompanying Judgment Order, or will provide cm-ecf notice of their entry, to the parties below.

Date: Oct 15 2024                                    /s/ Brian F Kenney
                                                     The Honorable Brian F. Kenney
Alexandria, Virginia                                 United States Bankruptcy Judge

Copies to:                                           Entered On Docket: Oct 15 2024

Michael Caldwell
5153 Clagett Street SW
Leesburg, VA 20175
*Plaintiff*

Timothy J. McGary
8609 Westwood Center Drive, Suite 203
Vienna, VA 22182
*Counsel for Plaintiff*

Patrick Stephen Rankin
713 Glen Drive
Westminster, MD 21157
*Defendant*

Nathan A. Fisher
3977 Chain Bridge Road, #2
Fairfax, VA 22030
*Counsel for Defendant*

14